UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TIMOTHY G. HINSON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>　　　　Defendant. | No. 2:13-CV-0083-JTR<br><br>ORDER GRANTING<br>DEFENDANT'S MOTION<br>FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are Cross-Motions for Summary Judgment. ECF No. 14, 15. Attorneys Maureen J. Rosette and Dana Chris Madsen represent Timothy G. Hinson (Plaintiff); Special Assistant United States Attorney L. Jamala Edwards represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits on November 28, 2006, alleging disability since October 1, 2006, due to Hepatitis B & C, joint deterioration, and "shattered hip and femur." Tr. 365-370, 451. The applications were denied initially and upon reconsideration. Administrative Law Judge (ALJ) R.J. Payne held hearings on September 4, 2008, and June 4, 2009, Tr. 54-158, and issued unfavorable decisions

ORDER GRANTING DEFENDANT'S MOTION . . . - 1

on September 30, 2008, Tr. 210-220, and June 18, 2009, Tr. 229-238.  On each occasion, the Appeals Council remanded the matter for additional proceedings.  ALJ Donna W. Shipps held a hearing in compliance with the Appeals Council's second remand directive on June 4, 2009, Tr. 159-197, and issued a third unfavorable decision on August 4, 2010, Tr. 25-42.  The Appeals Council denied review on January 4, 2013.  Tr. 1-6.  ALJ Shipps' August 2010 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on February 28, 2013.  ECF No. 1, 5.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.  They are only briefly summarized here.

Plaintiff was born on May 4, 1962, and was 44 years old on the alleged onset date, October 1, 2006. Tr. 75.  He completed the seventh grade in school and has not obtained a GED.  Tr. 76-77.  He indicated he quit school because he was emancipated at age 15 and came to Spokane to work.  Tr. 77.  At the administrative hearing held in September 2008, Plaintiff testified he stopped working his last job as a waiter in October 2006 because he could no longer physically perform the job task of carrying trays.  Tr. 78-79.  With respect to mental impairments, he testified he received counseling following a nervous breakdown at age 14, currently had "a lot of depression," and did not like to be around people.  Tr. 110-112.  Plaintiff testified at the June 4, 2009, administrative hearing that he quit using alcohol and illegal drugs about five or six months prior to the hearing.  Tr. 154.  He stated he sleeps 12 hours a day, cannot do anything, and does not go anywhere.  Tr. 144.  He testified he spends his days laying around and watching television.  Tr. 148.  He indicated he does not like to leave his house very often and did not like to be around people.  Tr. 148-150.  At the July 15, 2010, administrative hearing, Plaintiff

testified he did not "really do much of anything" other than sit at home. Tr. 165-166. He indicated he had not used alcohol or drugs for a year and a half. Tr. 174. Plaintiff testified his "mental state is not so hot," described himself as "manic-depressive" and indicated he experienced crying spells and anxiety attacks. Tr. 172, 174, 185. Plaintiff, however, stated he was not seeing anyone for mental health issues. Tr. 172-173.

## ADMINISTRATIVE DECISION

ALJ Shipps found that Plaintiff had not engaged in substantial gainful activity since October 1, 2006, the alleged onset date. Tr. 28. She determined, at step two, that Plaintiff had the following severe impairments: post-traumatic and degenerative arthrosis – bilateral hips and left shoulder; internal derangement, subacromial/subdeltoid bursitis and degenerative change of the AC joint – left shoulder; chronic obstructive pulmonary disease (COPD); asthma; status-post left inguinal hernia repair; status-post hip and femur fractures; hepatitis; anti-social personality disorder; and polysubstance abuse in full sustained remission. Tr. 28. At step three, ALJ Shipps found Plaintiff's severe impairments did not meet or medically equal a listed impairment. Tr. 28. ALJ Shipps assessed Plaintiff's RFC and determined he could perform light exertion level work with the following limitations: he is limited to occasional pushing, pulling, and reaching in all directions with his left upper extremity; he can frequently balance; he can occasionally stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, or scaffolds; he should avoid exposure to fumes, odors, dusts, gases, and hazards such as machinery or heights; he is limited to simple and/or well-learned complex tasks; he could not perform food preparation or handling; his attention and concentration would wane episodically; he would perform best in isolated environments but is capable of superficial contact with co-workers; he would do best away from the demands of the general public; he requires supervision to be firm but fair; and he would benefit from a routine environment. Tr. 33.

At step four, ALJ Shipps concluded Plaintiff had no past relevant work. Tr. 40. At step five, ALJ Shipps found that, considering Plaintiff's age, education, work experience and RFC, and based on the testimony of the vocational expert, Plaintiff was able to perform work existing in significant numbers in the national economy. Tr. 40-41. The ALJ thus determined that Plaintiff was not under a disability within the meaning of the Social Security Act at any time from October 1, 2006, the alleged onset date, through the date of the ALJ's decision, August 4, 2010. Tr. 41.

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the Court set out the standard of review:

A district court's order upholding the Commissioner's denial of benefits is reviewed de novo. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed de novo, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett,* 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(i-v), 416.920(a)(4)(i-v).

///

**ISSUE**

The question presented is whether substantial evidence exists to support the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff contends the ALJ erred because he is more limited from a psychological standpoint than what was determined by the ALJ in this case. ECF No. 14 at 12. Plaintiff specifically argues the ALJ failed to properly consider the opinions of examining medical sources regarding Plaintiff's psychological limitations. ECF No. 14 at 12-20.

**DISCUSSION**

As noted above, Plaintiff's contention in this case is that the ALJ erred by failing to accord proper weight to the opinions of certain medical professionals regarding his psychological limitations. ECF No. 15 at 8-15. Plaintiff argues the opinions expressed by Andrew B. Forsyth, Ph.D., on January 15, 2004; Pamela S. Ridgway, Ph.D, on July 8, 2008; Victoria Carroll, M.S., and W. Scott Mabee, Ph.D., on November 12, 2008; and Dr. Mabee on October 29, 2009, demonstrate he is more limited from a psychological standpoint than what was determined by the ALJ in this case. ECF No. 15 at 12-15.

It is the responsibility of the ALJ to determine credibility, resolve conflicts in medical testimony and resolve ambiguities. *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996). This Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon de novo review. 42 U.S.C. § 405(g). When the ALJ has made specific findings justifying a decision, and those findings are supported by substantial evidence in the record, a court is not permitted to second-guess that decision. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

///

The ALJ indicated that the objective medical evidence did not support the level of mental limitation claimed by Plaintiff and that Plaintiff's substance abuse during the relevant time period detracted from his overall credibility. Tr. 37. The ALJ noted Plaintiff's substance use during a portion of the relevant time period exacerbated his symptoms; however, with abstinence from substances and with medication, his depressive symptoms appeared to be controlled. Tr. 40. The ALJ found that Plaintiff has moderate difficulties in social functioning and moderate difficulties in concentration, persistence and pace, Tr. 31-32, and concluded that while the record reflects Plaintiff has some decreased function as a result of his mental impairments, it is not to the point that he is precluded from work. Tr. 40. The moderate limitations assessed by the ALJ are reflected in the ALJ's RFC determination which held that Plaintiff would be limited to simple and/or well-learned complex tasks, his attention and concentration would wane episodically, he would perform best in isolated environments but is capable of superficial contact with co-workers, he would do best away from the demands of the general public, he requires supervision to be firm but fair, and he would benefit from a routine environment. Tr. 33. The undersigned finds the ALJ's interpretation of the medical record is supported by substantial evidence. *See infra*.

### 1. Dr. Forsyth, January 2004 Evaluation

Dr. Forsyth performed a psychological evaluation of Plaintiff on January 15, 2004, to identify barriers to employment and to assist with DSHS service planning. Tr. 610. Plaintiff reported at that time that he used marijuana every chance he got, had been "a serious alcoholic for a lot of years" but was only a light drinker at that time, and had served a combined year or so in jail related to several domestic violence arrests. Tr. 611-612. Plaintiff indicated he spent several hours a day at his uncle's place playing chess and smoking marijuana. Tr. 613.

Dr. Forsyth reported Plaintiff's MMPI-2 was invalid as the validity scales reflected "moderately high response inconsistency together with apparent

overreporting of severe psychopathology, which likely stemmed from an attempt to appear as distressed as possible under the circumstances." Tr. 613.  It was noted, however, that Plaintiff came across as socially comfortable and facile.  Tr. 614. Dr. Forsyth diagnosed Cannabis Dependence, Rule Out Alcohol Abuse, Partner Relational Problem, Adjustment Disorder with Mixed Disturbance of Emotions and Conduct and Personality Disorder, NOS, antisocial, borderline traits, and gave Plaintiff a Global Assessment of Functioning Score of 55.[1]  Dr. Forsyth opined that Plaintiff was capable of performing unskilled/semi-skilled work such as janitorial, fast food preparation, dishwashing, simple assembly and stocking shelves/bagging groceries.  Tr. 615.

      The ALJ did not address Dr. Forsyth's report as it was produced more than two years prior to the October 2006 alleged onset date.  However, contrary to Plaintiff's briefing, ECF No. 14 at 13, Dr. Forsyth's opinion, as outlined above, clearly does not contradict the ALJ's RFC determination in this case.

      **2.**     **Dr. Michels, February 2005 Evaluation**

      On February 2, 2005, Plaintiff was examined by Paul Michels, M.D.  Tr. 574-580.  Dr. Michels' referenced the psychological evaluation completed by Dr. Forsyth in 2004; specifically, the invalid MMPI as a result of Plaintiff's "attempt to appear as distressed as possible under the circumstances."  Tr. 574.  Dr. Michels diagnosed Antisocial Personality Disorder and gave Plaintiff a GAF score of

---

[1] A GAF of 60-51 reflects moderate symptoms or moderate difficulty in social, occupational, or school functioning.  *See* Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994).  However, "[i]t was recommended that the GAF be dropped from the DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice." Diagnostic And Statistical Manual of Mental Disorders, 16 (5th ed. 2013).

approximately 65-70.[2] Dr. Michels stated "[i]t seems fairly apparent [Plaintiff] is making a conscious effort to leave out some information, as he seems quite capable of providing coherent longitudinal information about his background and symptoms except when it comes to legal history, custody issues, and substance use." Tr. 579. Dr. Michels indicated Plaintiff's focus and concentration seemed good, his pace and persistence seemed adequate, he seemed to have the intellectual capacity to understand, remember, and follow both complex and simple instructions, though he may perceive certain tasks as inappropriate and likely not follow through with those tasks, his interactions with others would likely pose the greatest difficulty, and stress would likely cause transient worsening in his subjective sense of distress and would likely lead to further antisocial behaviors. Tr. 580.

The parties' briefing fails to discuss Dr. Michels' report. However, the ALJ indicated that although Dr. Michels' evaluation is dated prior to Plaintiff's alleged onset date, his opinion was accorded "some weight" as the medical evidence of record included no significant treatment or evaluation of mental conditions until July 2008. Tr. 37-38. The ALJ appropriately accorded some weight to Dr. Michels' pre-alleged onset date opinion which demonstrated Plaintiff "frequently contradicted himself," was "evasive in describing his past substance use history," and tended to "potentially embellish" some of his symptoms. Tr. 37.

### 3. Dr. Ridgway, July 2008 Evaluation

On July 8, 2008, Dr. Ridgway completed a psychological evaluation of Plaintiff. Tr. 824-831. During the examination, Plaintiff denied current alcohol use, but when informed that the examiner could smell alcohol on his breath, he admitted to having "one beer yesterday." Tr. 829. It was noted "[t]he odor of

---

[2] A GAF of 70-61 is characterized as mild symptoms or mild difficulty in social, occupational, or school functioning, but generally functioning pretty well.

alcohol was detected from the claimant upon his arrival, and throughout the evaluation." Tr. 830. The results of the Personality Assessment Inventory (PAI) were deemed invalid due to inconsistent responding, Tr. 830, and Dr. Ridgway indicated "there were many inconsistencies in his reporting, and he is deemed to be an unreliable reporter," Tr. 831.

Dr. Ridgway diagnosed Alcohol Abuse; Rule Out Alcohol Dependence; and Personality Disorder, NOS, with antisocial and borderline traits, and assessed a GAF score of 55-60, indicative of moderate symptoms or moderate difficulty. Tr. 831. Dr. Ridgway opined that Plaintiff did not appear to exhibit significant difficulties with concentration, persistence, and/or pace, but did appear to have difficulties in the area of interpersonal and social functioning, which could limit his ability to effectively interact with the general public and/or get along with coworkers and supervisors. Tr. 831. Although Dr. Ridgway checked boxes on a check-box psychological/psychiatric evaluation form[3] indicating Plaintiff had marked limitations in his ability to exercise judgment and make decisions and to relate appropriately to co-workers and supervisors, Tr. 826, the narrative portion of Dr. Ridgway's report and GAF score did not reflect limitations of this severity.

The ALJ accorded "great weight" to Dr. Ridgway's report, finding her opinion consistent with the other accepted medical source opinions and based on the fact that Dr. Ridgway considered Plaintiff's substance abuse when making her diagnoses. Tr. 38. The ALJ accounted for Dr. Ridgway's findings of difficulties in the area of interpersonal and social functioning, Tr. 831, by concluding Plaintiff would work best in isolated environments, but would be capable of superficial

---

[3]A check-box form is entitled to little weight. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (stating that the ALJ's rejection of a check-off report that did not contain an explanation of the bases for the conclusions made was permissible).

contact with co-workers, would work best away from the demands of the general public, would require supervision to be firm but fair, and would benefit from a routine environment, Tr. 33.

### 4. Dr. Mabee and Ms. Carroll, November 2008 Evaluation

In November 2008, Plaintiff was examined by Victoria Carroll, MS, under the supervision of W. Scott Mabee, Ph.D. Tr. 898-909. Plaintiff reported he was unable to work due to panic attacks, depression and chronic pain. Tr. 904. Plaintiff reported he had used methamphetamine on a daily basis four years prior to the examination, but stopped using the drug three years ago. Tr. 906. He also reported daily marijuana use since age 12, last using a week prior to the evaluation, and alcohol abuse since age 18, last using in July 2008. Tr. 906. Plaintiff was administered the MMPI-2 which was deemed invalid. Tr. 907.

Plaintiff was diagnosed with Posttraumatic Stress Disorder, Chronic; Major Depressive Disorder, Moderate; Pain Disorder Associated with both Psychological Factors and General Medical Condition, Chronic; Alcohol Dependence, Early Full Remission (per client report); and Borderline and Antisocial Features. Tr. 907-908. Plaintiff was additionally given a current GAF score of 50.[4] The medical professionals noted Plaintiff reported "significant social anxiety beginning within the last year." Tr. 909. However, they found that if Plaintiff continued to abstain from alcohol, he should be able to understand and follow simple and written instructions, his pace of performance and persistence would be average, and his ability to reason and use appropriate judgment in most aspects of his life would be average. Tr. 909. They opined Plaintiff would have difficulties if tasks became

---

[4] A GAF of 50-41 reflects: "[s]erious symptoms (e.g., suicidal ideation, severe obsessive rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders-IV 32 (4th ed. 1994).

1  more demanding or increased in physical demands, and that his occupational GAF
2  suggested he would have serious difficulties functioning in a typical work
3  environment. Tr. 909. The psychological/psychiatric evaluation form
4  accompanying the report reflected Plaintiff had marked limitations in his ability to
5  respond appropriately to and tolerate the pressures and expectations of a normal
6  work setting and in his ability to control physical or motor movements and
7  maintain appropriate behavior. Tr. 900.

8      The ALJ assigned "little weight" to the conclusions of Ms. Carroll/Dr.
9  Mabee as they appeared to be based on Plaintiff's subjective reports, they were
10 inconsistent with objective findings, and there was no indication Plaintiff's
11 previous medical records were reviewed. Tr. 38. Plaintiff concedes his prior
12 medical records were not reviewed by Ms. Carroll/Dr. Mabee, but contends that
13 testing completed during the evaluation provides support for the conclusions
14 reached by these medical professionals. ECF No. 14 at 17. As indicated by the
15 ALJ, a review of the record likely would have shown Plaintiff's history of
16 inconsistent reporting and reluctance to disclose his substance use. Tr. 38-39. As
17 further noted by the ALJ, Ms. Carroll/Dr. Mabee opined that any substance use
18 likely exacerbates his psychological issues, Tr. 38, 908, and it was apparent at the
19 time of the examination that Plaintiff continued to use marijuana and had
20 reportedly continued to drink alcohol up until at least just a few months prior to the
21 examination, Tr. 906. The ALJ appropriately determined Plaintiff's substance use
22 was relevant to his symptomatology. Tr. 38. The ALJ provided valid reasons,
23 supported by the evidence of record, for according "little weight" to the report of
24 Ms. Carroll/Dr. Mabee.

25     **5.   Dr. Moore, June 2009 Testimony**
26     At the June 4, 2009, administrative hearing, Margaret Moore, Ph.D., testified
27 as a medical expert. Tr. 135-141. Dr. Moore indicated that essentially every
28 evaluator of record had diagnosed a personality disorder, usually of the anti-social

type.  Tr. 136.  Dr. Moore identified the other primary issue as substance abuse. Tr. 136.  She mentioned that Plaintiff presented to an evaluation with Dr. Ridgeway in July 2008 with alcohol on his breath and that inconsistent reporting about substance abuse was prevalent throughout the record.  Tr. 136-137.  Dr. Moore indicated evaluators noted Plaintiff's rather dramatic and extreme claims about his mood, but then describe Plaintiff's actual presentation as not appearing depressed or anxious and instead looking comfortable and easygoing.  Tr. 137.  Dr. Moore opined that Plaintiff was exaggerating symptoms and minimizing activities, including his substance abuse.  Tr. 137-138.  She opined Plaintiff would have a moderate impairment in the social domain, Tr. 138, and a moderate limitation in accepting instructions and responding appropriately to criticism, Tr. 139.

The ALJ found Dr. Moore's testimony noteworthy because she pointed out that Plaintiff's mental impairments were of little significance for almost three years of the relevant time period.  Tr. 39.  Dr. Moore's testimony does not contradict the RFC assessment of the ALJ.

### 6. Dr. Mabee, October 2009 Evaluation

On October 29, 2009, Plaintiff underwent a consultative examination with Dr. Mabee.  Tr. 959-968.  The results of the PAI were invalid suggesting he responded inconsistently to test questions and over reported his psychopathology. Tr. 964.  Nevertheless, Dr. Mabee indicated Plaintiff had marked limitations on his ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting, to care for self, including personal hygiene and appearance, and to maintain appropriate behavior in a work setting.  Tr. 962.  Dr. Mabee wrote that Plaintiff had the ability to understand, remember and carry out simple, repetitive tasks, but his fatigue and low motivation would lead him to only be able to concentrate for short periods of time.  Tr. 962.  He opined that Plaintiff could make simple work related decisions, work without close supervision, function best in positions that have minimal contact with supervisors, co-workers, and the

general public, and could ask questions and take instructions with little difficulty. Tr. 962. He further opined that, with improved mood, Plaintiff should be able to maintain regular attendance of part-time work. Tr. 962.

The ALJ did not accord Dr. Mabee's opinion great weight, as it was consistent only with Ms. Carroll's evaluation and not with the other medical provider opinions of record. Tr. 39. The ALJ also indicated Dr. Mabee did not review any of Plaintiff's prior medical history, except for Ms. Carroll's evaluation, and, without reviewing the prior history, Dr. Mabee missed what previous and subsequent evaluators noted: Plaintiff tended to exaggerate and provide misinformation during assessments. Tr. 39. The reasons provided by the ALJ for according Dr. Mabee's October 2009 report little weight are supported by the evidence or record and free of error.

### 7. Dr. Severinghaus, December 2009 Evaluation

On December 6, 2009, John B. Severinghaus, Ph.D., completed a report following a consultative examination of Plaintiff. Tr. 919-923. Dr. Severinghaus diagnosed alcohol dependence, in sustained early remission, provisional; cannabis dependence, in sustained early remission, provisional; past use of other street drugs, in sustained remission, provisional; nicotine dependence; depressive disorder NOS; anxiety disorder NOS, with post-traumatic aspects; history of possible malingering, according to previous assessments; and personality disorder NOS, with antisocial features and anger problems. Tr. 922. He also assessed a GAF score of 55, indicative of moderate symptoms. Tr. 922. Dr. Severinghaus indicated it was difficult to feel fully confident in Plaintiff's statements, given his history of possible malingering and "elements of his presentation today which suggest a continuation of this pattern," and opined that Plaintiff's interpersonal functioning had improved with cessation of substance abuse, but may continue to be affected by dysphoria, anxiety or anger outbursts. Tr. 922-923. However, Dr.
///

ORDER GRANTING DEFENDANT'S MOTION . . . - 14

Severinghaus determined Plaintiff was not precluded from low stress interaction with others. Tr. 923.

The ALJ gave Dr. Severinghaus' opinion "great weight" as he was able to review much of the medical evidence (though November 2009) and his assessment was consistent with both his own objective findings and the other medical source findings in general. Tr. 39. Dr. Severinghaus' opinion does not conflict with the ALJ's RFC assessment, and the ALJ's rationale for according Dr. Severinghaus' opinion "great weight" is entirely proper.

### 8. Dr. Gentile, December 2009 Report

On December 30, 2009, state agency reviewing physician, Mary Gentile, Ph.D., completed a Mental Residual Functional Capacity Assessment form, Tr. 932-935, and a Psychiatric Review Technique form, Tr. 944-957. On the Mental Residual Functional Capacity Assessment form, Dr. Gentile indicated Plaintiff would be markedly limited in his ability to interact appropriately with the general public, but otherwise determined Plaintiff was no more than moderately limited. Tr. 932-933, 954. Dr. Gentile opined Plaintiff was capable of simple and well-learned complex tasks, his attention and concentration would wane episodically due to psychiatric symptoms, he would do best in more isolated environments, he is capable of superficial coworker contact, he would do best away from the demands of the general public, supervision should be firm but fair, he would benefit from a routine environment as he is reactive to change, he should avoid hazards while actively abusing substances, and he is capable of reaching the goals set by others. Tr. 934.

The ALJ assigned "significant weight" to Dr. Gentile's opinion based on the same reasoning for giving great weight to the opinion of Dr. Severinghaus. Tr. 39. The ALJ's finding in this regard is appropriate. Dr. Gentile's opinion is consistent with the ALJ's RFC determination, as well as the majority of the other medical source findings of record.

### 9. Dr. Gardner, April 2010 Report

On April 14, 2010, state agency reviewing physician, Jerry Gardner, Ph.D., reviewed the record and indicated Dr. Gentile's December 2009 findings were accurate. Tr. 973. Dr. Gardner noted recent records from Community Health Association of Spokane, Tr. 971, reflected that Plaintiff's depression was well controlled with medication, Tr. 973. He concluded the limitations assessed by Dr. Gentile appeared reasonable and appropriate given the updated findings and the totality of the evidence in the file. Tr. 973.

This state agency reviewing physician report lends further support for the ALJ's RFC assessment in this case. Tr. 39.

As noted above, it is the responsibility of the ALJ to determine credibility, resolve conflicts in medical testimony and resolve ambiguities, *Saelee*, 94 F.3d at 522, and this Court may not substitute its own judgment for that of the ALJ, 42 U.S.C. § 405(g). Where, as here, the ALJ has made specific findings justifying a decision, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision. *Fair*, 885 F.2d at 604. Based on the foregoing, the ALJ did not err by rejecting those portions of medical reports which are not consistent with the ALJ's RFC determination. As indicated above, the ALJ's rationale is supported by substantial record evidence and free of error. *Roberts*, 66 F.3d at 184. The weight of the record evidence supports the ALJ's determinations in this case.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and is not based on legal error. Accordingly,

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for **DEFENDANT** and the file shall be **CLOSED**.

DATED February 7, 2014.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE